Case number 16-5110, Citizens for Responsibility and Ethics in Washington Appellant v. United States Department of Justice et al. Mr. Morrison for the Appellant, Mr. Tenney for the Appellee. Morning, Your Honor. Morning. May it please the Court. The question presented in this case is whether the uncertain remedy under the Freedom of Information Act constitutes an adequate alternative remedy for the relief that plaintiffs seek in this case. I want to be clear about what plaintiffs are seeking in this case. They are seeking an injunction against the defendants to require the defendants to carry out their affirmative obligation under Section 552A2 to publish on a regular basis all of the controlling opinions by the Office of Legal Counsel and, in addition, to provide an index for the public for those opinions. The government's position is very simple. It says that plaintiffs cannot get this relief under either the Freedom of Information Act or under the Administrative Procedure Act under which this case has been brought. The government says that the only remedy that we have is to make a record-by-record request for opinions of OLC. If they are granted, fine. If they're denied, we go to the district court, and we must do this on a one-by-one basis, and we can never get the injunction we want under either FOIA or under the Administrative Procedure Act. That is not an adequate alternative remedy under Section 704 of the APA. And if I can... If you... you seem... your brief suggests you agree that that's the appropriate FOIA remedy, and you argue it's inadequate, correct? Your Honor, let me be clear about this. We don't think that FOIA is the right answer, but under this Court's decision and under Boeing, as long as the remedy under the alternative here, FOIA, is doubtful or uncertain, then the APA is not precluded. Well, let me ask you about two things about the case. The amicus brief here and the district court in a part of the opinion that wasn't critical to his decision, they both suggest that injunctive relief would be available under FOIA. And they point to the first clause of 552A3B, which says, on complaint, the district court has jurisdiction to enjoin the agency from withholding agency records and to order their production. So their argument is that the first clause of that section gives the district court full injunctive relief, and that seems to be supported by our decisions in both Payne and Irons, and certainly by the Supreme Court's decision in renegotiation board. That's the amicus argument. Yes, Your Honor. So, is there something... I want to be clear. I don't disagree with that argument as far as it goes, which is, in situations like Payne or others where the government has been giving documents up, has been sued, gives up documents, then has to be sued again and again, and finally, at this point, the court has authority under what I refer to as their ancillary relief equity cleanup doctrine to order them to stop withholding documents. But in this case, we are asking for affirmative relief. Okay, but there's nothing in the statute. There's nothing in the first part of the statute where it says the district court has jurisdiction to enjoin the agency from withholding agency records. There's nothing in there that suggests that that's limited to situations where the agency, as in Payne, for example, has a history of refusing to comply. You filed a FOIA, right? It doesn't say that. It says... And renegotiation board is pretty powerful, right? It says in there that there's nothing in the statute that suggests any weakening of a district court's traditional equitable powers. Well, first... I know I'm asking you questions that are... If you win on this, you have a clean FOIA case, right? Yes. You just don't have an APA case, correct? Yes. But actually, is there anything wrong with their argument about the statute? Is there something about the statute here that led you to think that maybe they're wrong about that and that APA is your only adequate remedy? Well, I would say two things about that, Your Honor. First, the term withholding suggests to me, and certainly we've got a problem because the government insists on this, that withholding applies only to existing documents. Our relief, which we are seeking, would ask the judge to order that new OLC opinions on an ongoing basis be published without a future request. Maybe that's withholding, but maybe it's not. The second point is... Doesn't IRNS support that relief? Well, it does in a way, Your Honor, but, of course, the government didn't contest that obligation in IRNS. That was not an issue with IRNS. Okay. That's a good point. And it comes after this Court's decision, Kennecott-Copper, which suggests a narrow reading of the relief provisions under FOIA. That's a real problem, right, Kennecott? Kennecott. If we held there that under A-1, which requires regulations to be published in the Federal Register, the FOIA injunctive relief remedy does not include an injunction requiring publication in the Federal Register, how in the world, if we follow Kennecott, do we order the relief under FOIA that you're asking for here? Well, I think that's a very good question, Your Honor, and I would suggest that the government needs to respond to that. We suggested a distinction that publication in the Federal Register may be different from publishing under A-2. Well, at some point, there's a question that the parties scored below that hasn't really been scored on our level, is whether these OLC opinions are covered by A-2 at all. Yes, that's a merits question, Your Honor, and we're happy to brief that. We tried to brief that at the District Court. The District Court said we lost on this jurisdiction argument. But if I may return to the table's question, the other aspect that we think is doubtful or uncertain or probably even less so and doesn't fall within the withholding is under A-2, we are entitled and the public is entitled to an index of all the documents that come under A-2. That is not a withholding. That would require them to create an index to the extent that they don't have one already, and in any event, to make that public. We don't think that the publication of an index is consistent with withholding. But may I say this, Your Honor, we're in a little awkward position. We are happy to be told that you can get all the relief you want under FOIA. What we're not happy to be told is what the government's position is, which you can't ever get the relief under the APA or FOIA, regardless of Your Honor's view on the substantive merits of our claim. The government says this is an adequate remedy, but you can't have it. I don't understand, and this Court's opinions do not support that conclusion. Indeed, Bowen says three times that the question is whether this remedy duplicates the remedy we're seeking here under the APA, duplicates something we can get under FOIA. If we can't get it under FOIA, how can that possibly be duplication? And so we're happy to whatever the answer is, Your Honor, we think and we consider this. Is that really the proper articulation of the test, which is that under Bowen, that under 704, unless the remedy is equivalent or complete or perfect, you have a 704 claim? I mean, the statutory language is adequate. Adequate. And this Court has said after Bowen that if it's uncertain or doubtful, and we think it fits both of those, that at least the government's position is incorrect. And we think Bowen states the proposition that, in general, 704 is an exception to the broad grant of jurisdiction to the APA, and that unless the other remedy is adequate, we're entitled to proceed on the merits. Can I ask you about – let me go beyond the just procedural question that's before us right now. I'm curious about what exactly you're looking for in the end here. Under the standards for releasing opinions that's Joint Appendix 42, this Barron memo, I gather what OLC does is it releases opinions that they think are significant, correct? Yes, they do. And you want all opinions that aren't privileged or – Yes. Right? That's correct, Your Honor. That's what you – do you have any sense of how many we're talking about? Do you know whether OLC – well, I could ask the government this – whether they issue on their website most – are they considered most of their decisions significant or most of them not? Do you have any idea? I do not know, Your Honor. We have no evidence in the record. My impression is that they issue some, but it's by no means all or most, but you could ask the government that. And we're principally focusing on the ones that the best practices memo describes as controlling, and we think that that's surely a smaller subset that's also referred to as formal opinions and maybe some other ones as well, but that's a matter for the merits. Thank you. I see my time is up. Could you answer the question, I guess, the district court and the government here take the view that, look, under FOIA, there's de novo review, and it's of the same genre. It's equitable relief that you can get, and even if it's not the prospective broad injunction, it's effective relief. What's wrong under our case law with that view as being adequate? Well, I'm glad Your Honor mentioned the word effective because I think that's an important aspect of this, and that is under the government's view, we have to make a document-by-document request. As this court is well aware, the government has a lot of time to respond, and we have to litigate every one of these cases. We've noticed this. Yes, I thought Your Honor had. That's quite different from being able to go to their website and identify a particular record, and if it's there, we can get it right away, and if not, we can request it. The particularized harm that gives you standing is not getting the information to the government. As far as the not being on the website, that's a generalized harm, not sufficiently standing. Well, I think it's generalized. It is. That question, of course, is a question relating to the contents of the obligation, and we think that although in general. No, no, no, no. The government can have an obligation, and nobody still has a standing to sue them. Well, I think. It's not just the obligation. The question here becomes the standing, and the standing, your standing, as I understand it, is based on the individualized harm that you're not getting the information. Well. As far as it not being published, that's the public at large. The public at large just doesn't use it. Well, the individual harm is that we, the crew asserts that it uses OLC opinions as part of its ongoing mission. It made this allegation as a complaint. The government. No, that's the basis on which you might be harmed. Yes, yes, that's. The harm is what? That you can't get the information. Yes, on an easy and regular basis to conduct our business. The government did not raise standing in this case, and so. Well, that's jurisdictional. It is jurisdictional. We don't win to them not raising it. I believe that our complaint more than adequately alleges that the court wishes further. We're glad to reject it. But I guess to follow up on my earlier question, let's suppose you do have to sue individually, and, you know, after the third such suit, you prevail three times. There's an OLC opinion that was improperly withheld, and you got a court order requiring them to turn it over. After the third one, can't you, under, you know, pain or the other cases, then get your injunction? Because you can say, look, we, you know, they keep doing this. They obviously aren't complying with the legal standards for what they have to make available for public inspection. So give us our injunction. I mean, it may take you longer. I know you don't want to have to do that, but why isn't that adequate? Well, I suppose that gets to the question of being, in other words, adequate under 704. And we don't think having to make repeated requests of the same agency, this is not a case like Women's Equity Action League in which the remedy was considered to be adequate because you couldn't sue the government for everything you'd have to sue private institutions for. I know of no case in which you have to repeatedly sue the government, and it's continued to be adequate. Moreover, it's not clear to me that the government would comply. You're saying it's inadequate because you do have to continue to sue? Yes, I would certainly say that, Your Honor. In addition, we can't get the index. What case would that be? You're saying you knew of no decisions that said that it was adequate if you had to continue to sue the government. I ask you, do you have any that says it's inadequate because of having to continue to sue the government? If you say yes, I'm asking you what case that is. I would say United States against the Department of Justice, in which the government was not releasing its district court opinions on a regular basis, and the Supreme Court said that they had to release them on a regular basis. I would say that the tax analysts and advocates for this court's decision, where the technical advice memorandum were not being regularly released, the court had to do it. But I would have to say, Your Honor, I know of no case in which, in Judge Wilkins' phrase, we went to court three times and had to sue them every time, in which this court has said that that's not adequate. Of course, the difficulty is that we would continue to get disputes with the Justice Department as to whether the three cases that we won were representative of all of the OLC opinions that they have. We recognize that there's a variety of OLC opinions, some of which the formal opinions are precedential controlling. Others, which may not be formal, may be equally precedential. And my fear is that unless we get some kind of a broad standard that tells the department what it has to do on a continuing basis, we will continue to be back in court and back before this court on a regular basis. So let me make sure I have exactly what your argument is in the APA side of this. Your argument is that as long as the FOIA remedy is uncertain, then under the APA it's inadequate, and it's uncertain in your view because the statute uses the word withhold and because of our decision in Kennecott. Is that basically it? And also the government's continuing position on this says that it's uncertain. We think in a way we ought to be entitled at the beginning of the case to know whether we can sue or not, and we knew what the government's position was very soon after the case got started. We actually, when we filed the case, we thought the government would engage us on the merits. We'd have the kind of merits-based discussion we expected to have. That's one thing I don't understand here is why you just didn't plead in the alternative. We initially thought that the APA remedy was the correct remedy. We came into court and the district judge said to us we had mentioned FOIA in our original complaint. The district judge said it was uncertain whether we were suing under the APA or FOIA. The government, meanwhile, had come in and said to us not only couldn't we use FOIA, but we had to make a document-by-document request, and since we hadn't made a document request at all, we couldn't sue under the government's position. Rather than getting tangled in what we hoped to avoid, which was a long procedural argument, we did what Judge Sullivan said and we played it straightforward. This is an APA case because we thought it was better. I might say, Your Honor, this is not a case where we're trying to get an advantage in suing under the APA. There are advantages under FOIA. We get attorney's fees, we get a de novo review, shorter time to answer, we get a Vaughn index. We may not get most of these things under the APA. So we're not trying to get an advantage in suing under the APA. We did what we thought the case law suggested we should do, and it was the straightforward way of getting the kind of affirmative relief that we think that A2 permits us to get and which the government says we can't get under either branch of this case. Okay, thank you. Thank you, Your Honor. May it please the Court, counsel focused on uncertainties about the FOIA remedy, but I want to just focus on what is undisputed about the FOIA remedy. If they think that there are documents or categories of documents that they can reasonably describe that OLC has not made available to them but which should be made available to them, they can file a request with OLC or with the Department of Justice, and if they're not satisfied with the response, they can go to court under FOIA and claim that the response was inadequate, either in not responding or in not producing records that should have been produced, and then they can litigate about that. Could they ask for all documents that OCR, I'm sorry, OLC has decided not to put on its website? I don't know that they could ask for literally all documents. There's all opinions. I mean, if they describe, for example... No, no, no, all opinions. They want everything public because they do research on it, so could they just say we want on the website every opinion that the agency has determined in its process that is not what's significant? Essentially, yes. They could do that? I'll put one caveat on that, but just to be concrete about it, there have been requests over the years for all memoranda opinions that were not placed on OLC's website, and those requests have been processed. Now, OLC believes most of those are privileged, and then you could litigate about that, but the way that they're describing what they think is a controlling opinion is a little bit uncertain and shifting, and so there might be things to be worked out about exactly what they mean, but in concept, yes, you could make such a request that people have, and then if you don't like the answer, you can litigate about it. I realize this is a diversion question, but it is one that bothers me. Are you then conceding that OLC opinions can be documents covered by Subsection 2, 552.2? No, we are not, Your Honor. No, the point that I'm making is a procedural one. It's that if they want to raise the arguments they're raising now, they can raise them. The question I'm asking you is more substantive than this should be. Are you conceding that OLC opinions could be subject to A2 documents for purposes of public opinion? We don't believe the opinions that OLC generates are covered by that section, and so the only point that I'm making, because we're here on a procedural point, Your Honor, is the point that I'm making is simply if they're covered at all, then they would be discoverable only as FOIA documents, or if you disclose them all, only as FOIA documents rather than as, I guess if that's FOIA too, but rather than as published documents. Right, Your Honor, and we think actually that most of the times when there are releases under the FOIA, and this is discussed in the response that they got to their letter here, most of the time when there are releases, they're discretionary releases, and the executive branch waives privileges rather than that we conclude that the documents are privileged. But the only question here, and this is why I started with this, is the question is whether they have a forum in which they can litigate an adequate remedy in the court, and what they're saying is OLC has some documents that we're entitled to, and there's no question that if they think that, they can ask for the documents, reasonably describe them, and then if OLC doesn't produce them, they can file a lawsuit, and then they can litigate about it. And if you compare this case to cases like Council 11 for the Blind and Women's Equity Action League, I mean, this case is actually, the remedy, it's much more clear that the remedy here is adequate, because in those cases what happened was the government had an oversight role and was supposed to make sure that other entities to which the government was giving funding were not discriminating, and they said the government is falling down on the job and not carrying out that mandate, and so they wanted to sue the government and say, no, you have to make sure that these federal funds aren't being used in this impermissible manner, and the court said, well, it's an adequate remedy. Every time some recipient of the funds discriminates, you can file a lawsuit against them. That's an adequate remedy. And here it's much closer. They're saying simply if there are documents, you're suing the very people who you think are doing the wrong thing, in this case OLC, as opposed to there where you thought the government wasn't monitoring well enough and you had no remedies at all against them. And, you know, they say there has to be a document-by-document request. Obviously you can have requests for categories of documents. You don't have to file a new lawsuit for each one. But even so, even if it's limited to document-by-document or groups of documents, if the FOIA remedy does not include the possibility of injunctive relief, how do you square that with the Supreme Court's decision in Bowen or our decision in Garcia, where we say, you know, it was adequate because there was injunctive relief? It isn't here, according to your theory, government's theory. Well, I mean, the question is about prospective, you know, affirmative injunctive relief. I.e. injunctions, right? Sure. Well, I mean, an injunction could be an order to turn over a document. But I guess the point, I mean, Bowen... It's a little injunction. They want a big injunction. They want a big injunction. That's right, Your Honor. And that's what they wanted in Council 11 for the Blind, and that's what they wanted in Women's Equity Action League. And, I mean, in Bowen, what the Supreme Court held, I mean, there was no specific remedy for the claim about Medicare and Medicaid that they were bringing. What they were saying was that the claims court was an adequate remedy. And the court said it's not even clear you could get a remedy from the claims court, and we don't think that that displaces the remedy that would be available under the APA for administrative action. In Garcia, this court said that there was an adequate remedy, and specifically what was at issue in Garcia was they said USDA isn't taking action on complaints. And nobody said you could get an injunction that would require the USDA to process the complaints better. What they said, the remedy that was adequate was that you could get your actual claim of discrimination itself redressed, and it's like Women's Equity Action League and Coker v. Sullivan and Council 11 for the Blind. The thing that's difficult to reconcile is plaintiff's position with Council 11 for the Blind because they wanted what was characterized here as a big injunction. They wanted to say the government has to do more oversight. You know, in this revenue-sharing program, the government needs to make sure that all of the recipients, they don't want to go recipient by recipient, and every time they see a problem, sue somebody. They want to get the government out ahead of it. And there was no question they couldn't get that. This court said that the government wouldn't even be more than a nominal defendant, and it was an adequate remedy. So I just want to turn around to see the government's argument here, your position. So Amicus points out that 552A1 and 2, they're obligations that are imposed on the government by FOIA. They're independent of a specific request, right? Yes. And the government's position is those are unenforceable except through individual requests for documents, right? Well, they're not unenforceable, Your Honor, and this court discussed this in Kennecott. I mean, the primary means by which Congress wanted to make sure that the government was complying with those was by saying that if there were materials that should have been made available under A1 or A2, then the government wasn't entitled to rely on those. Right, but the public has no, in other words, lawyers who say, let's say, for example, your client is not OLC here, but let's just assume it's, you know, the NLRB. Okay? And let's assume the NLRB has just decided it's no longer going to, it's not going to publish its opinions, it's not going to make them public anymore, but only the significant ones. Now, there's lawyers all over the country who are practicing before the NLRB, and now they don't have that set of precedents. There's people at law schools who do research on this stuff. They don't have that. And to say, well, you can't use it against them doesn't help them because nobody's threatening to use it against them. They want it so they can prepare for cases or they can write their law review articles. And from the government's point of view, that's all unenforceable, right? Well, there's no way to do that. Well, no, Your Honor, there's a few responses. First, the fact that the first group that you mentioned was lawyers who were practicing before the NLRB, and, of course, if the NLRB intended to apply its precedents in cases, then it couldn't, as a practical matter, the NLRB wouldn't be well advised to withhold all of them and then be stopped from applying them in future cases because it hadn't made them public. No, but they couldn't. They just can't apply them against a person. Well, I mean, in each case there is a dispute between two people, and so they'd be likely to be applying. But the bottom line is it's not enforceable through the courts. Well, I mean, the other point, of course, is the one that I think was raised earlier, is, you know, if somebody makes a request for the materials and, I mean, this is obviously a far-fetched hypothetical that an agency like the NLRB would just entirely stop publishing its opinions, but, you know, if they had this practice. They went right ahead and decided cases when they didn't have anybody else properly serving on the board. Why was it hypothetical? If an agency were to do that, you know, of course a FOIA request could be made and FOIA litigation could be begun, and as the district court pointed out in this case and other courts have pointed out, there are consequences for losing cases like that. And having lost a case like that, if an agency resisted a conclusion by this court that it had an obligation to publish these decisions or to make them available, we would be in an entirely different situation, and I don't think that that could be described as unenforceable through the courts. The point is simply that you can't come in ahead of time and say, I haven't made any FOIA requests, I haven't established any precedent that you actually do need to publish these things, and, in fact, we suggest that the precedent on this point, the Electronic Frontier Foundation, cuts in the exact opposite direction. And I just wanted to make one additional point, if I might, Your Honor. Sure. I have a couple more questions. Which is that, I mean, one reason that Congress would set it up this way is illustrated by this case. It's very difficult to understand what sort of injunction they contemplate is going to come about at the end of this litigation or what the category of documents that they want is. They say they want all the formal opinions. You couldn't issue an injunction, a district court couldn't issue an injunction saying publish all the formal opinions because that would cover the opinion that was at issue in Electronic Frontier Foundation. And they say they want discovery to figure out which opinions it is that they actually are entitled to. Now, our position is simple. We don't think they're entitled to any of them, but that's not going to be their position. And the point I'm making here is not to jump ahead to the merits because that's not before the court. The point that I'm making is that Congress appropriately concluded that if you want to bring a case and assert that there are documents or a reasonably describable category of documents that an agency needs to produce, that it makes sense to litigate that when there are actual concrete documents that you have requested that the agency has refused your request. So that's suggesting that we should jump ahead to the merits. The order of oil is an order of dismissal, judgment of dismissal. Our jurisdiction extends to deciding to affirm a district court on a basis different than the one asserted by the district court. So could we not, in fact, lawfully at least, go as far as deciding that it doesn't make a claim for relief and dismiss on that basis? Affirm on that basis. Yes, you would have jurisdiction to do so. We haven't really briefed the question, and we think that the grounds on which the district court decided were correct. We're urging the court to do that, but Your Honor is quite correct that that is available. We also have another point, which we've alluded to, which is related to the points I'm making about the APA, the need to identify a discrete action that the agency needs to take, which we don't think has been done here either. We've raised that, again, as a point about why it really doesn't make sense to have this as an APA claim. But there are other issues before the district court that we don't think you need to reach because we think the district court got it right. I don't want to get you too far down my rabbit trail, but I do want to assert that it's not a whole rabbit trail. So just a couple of other questions. What is your view about the first part of 5552A3B, that the district court has jurisdiction to enjoin the agency from withholding agency records and to order their production? Amicus's argument is those are two separate provisions, and actually Kennecott didn't look at the first part of that statute. What do you think that means? It's not clear from the text that those are two different things rather than that, you know, if you say, I mean, in some ways they're two sides of the same coin, stop withholding and order the production. Now, again, as your... No, because the first part is to enjoin, and it doesn't say anything about withheld. It doesn't say anything about a specific document. It does have the words withheld. And the second part says enjoin the agency from withholding. The second part says order production. I mean, so, you know, I guess what I'm asking is if... What does the first part of that sentence add to the statute? No, it's... If they can't issue a forward-looking injunction, doesn't order the production of any agency record improperly withheld do everything? That leaves the first part of the statute surplus. It doesn't do anything. Does it? Your Honor, it's possible or it's possible that, you know, obviously this court has held in pain, you know, that was a circumstance that was much narrower than what plaintiffs are talking about here that would give meaning to that first part. Because in that case there was a practice of withholding. Is that your point? Yes. Okay. And, again, I mean, we think that this case is not a good one to decide issues about the scope of FOIA, particularly because the parties agree and particularly because the district court concluded quite rightly that even if you just take the part of the aspects of FOIA that are completely undisputed, that alone is an adequate remedy. And we think, you know, it's clear, as Your Honor pointed out earlier, you know, the Supreme Court has said that FOIA doesn't entirely eliminate, you know, equitable discretion of courts. And so we know that there are some injunctions. Well, the renegotiation board said it doesn't eliminate it at all. Right. And I guess my point is, so we don't have a dispute about whether there is equitable relief, and the question would be which are the appropriate cases in which that relief should be exercised. And we would submit that that issue should be decided in a case in which somebody is urging that equitable relief is appropriate under the FOIA, and the parties could join issue on that question. Here what's happened is they've disclaimed any effort to obtain relief under the FOIA. The district court properly concluded that there is no APA remedy in this case, and we would submit that that would be the proper ground on which to affirm that decision. But I guess that begs the question of, so what happens if we issue a very hypothetically, if we were to affirm on the grounds that the district for basically the same rationale that the district court did? So we don't really have to decide all the contours of the scope of FOIA, but it's just that it's an adequate remedy. And then, you know, the case proceeds under FOIA, but perhaps the remedy that's ordered and that's affirmed isn't really kind of what we thought it would be. We can't go back and revisit the 704 question later, can we? Correct, Your Honor, but I guess I'm not proposing that this court affirm the district court based on presuming anything uncertain about what the FOIA remedy would be. I'm not saying this court should presume that there must be some injunction buried in here at the end of the day, because our point is simply that, as was pointed out earlier, the injury that they're alleging that they've suffered is the deprivation of information. And there's no question that they can litigate about whether and attempt to address that injury through the part of FOIA that is just regularly applied by this court all the time, which is just they can make a request and they can try to get the documents. And this court wouldn't have to presume that they could do anything more than that under the FOIA for the FOIA to be an adequate remedy, because the FOIA, you know, Congress set up the FOIA and the requesting system precisely for this purpose to say that if somebody thinks that they have an informational injury, they can seek documents and they can litigate about it. And so this court, there's not going to be a surprise, you know, along those lines. Now, there are questions that could be posed about whether, in addition to that, there are injunctions in certain circumstances and what those circumstances would be. But I'm not asking this court to presume any answer to that question. And so there would be no need to revisit the 704 analysis. You would just say either there is or there isn't more relief available under FOIA for a plaintiff who filed a request and brought a claim under FOIA, which this plaintiff didn't. Well, do you think as a doctrinal matter that when we look at what 704 means under the APA, specifically with respect to the issue of what is an adequate remedy, that there's not one test that applies for every statute that the test for, you know, in the Medicaid context might be different than the FOIA context. It might be different in some other context. Is the adequate remedy test always the same, or is it context-specific? Well, I don't think the test is different. The application is different in each context. And so, for example, I mean, to take Medicaid as an example, you know, in Bowen, the Supreme Court pointed out that there it was applying the test in a circumstance in which Congress had not provided a specific alternative remedy to the APA for the kind of injury that was being asserted there. In the FOIA, conversely, there's no dispute that Congress has provided a specific alternative remedy. And then in El Rio, the issue before the Court was whether there was an alternative remedy in the Federal Tort Claims Act, and the Court, you know, analyzed it and concluded, no, Congress didn't mean for that to be the remedy, and that actually wouldn't necessarily provide a remedy. But here, I mean, the answer to these questions in this case is quite simple. There's no dispute that Congress provided a remedy for informational injuries of this type. There's no dispute that it's the FOIA. There's no dispute that if they think there are documents that OLC needs to turn over, that they can litigate about whether OLC needs to turn them over in the context of a FOIA suit. So this case is actually just quite easy under 704 as the District Court recognized. Easy? You've been on your feet a long time. Let me ask you. There's a lot of ancillary questions, but the APA question actually is quite straightforward, yes. Well, you wouldn't think the case is easy when you read the brief because both sides, I mean, it's kind of both sides. What we've got here is we've got two sets of really good briefs where the parties seem to agree that the FOIA remedy is limited to specific questions, but the parties dramatically disagree about the consequences of that. And then we also have a very effective amicus brief which suggests that you're both wrong. So you may be easy, but I haven't yet gotten there. So let me ask you two other questions. You say that they could, under FOIA, file a request for a group of documents, right, including they could say all documents, all opinions that the agency has concluded are not significant, right? Could they do that? I mean, again, I'm hesitant to say whether a particular request, often there's a back and forth to make sure everyone understands what they mean. Okay. I just told you. I suspect that there are answers. You know, all documents that are significant is going to be a huge number of documents. They define the universe of documents in their complaint. Yeah, right. And they use your own standard. They use the standard that's at JA-42. They say we want all decisions that the agency, through its process, and the agency has this process that takes place in the front office, where we're consulting with other agencies about what decisions are significant and what aren't. We want all decisions published that are not significant. I think that would be okay. The question is what they mean by decisions because they need opinions. Just opinions. If you're talking about the formal memorandum opinions, yes, I think they could. Somebody filed such a request and it was processed. It was? I mean, years ago. It's not in the record, but just to be concrete about it. What happened? I mean, most of them, one of them was released. Most of them were withheld as privileged. And then if that party was, that didn't go any further, but if that party, you know, was dissatisfied with that, they could litigate under FOIA. But that case didn't get litigated. Right. Okay. The second question is how does that solve their index problem? That doesn't give them an index. The statute requires an index. Well, their index, first of all, their complaint doesn't say anything about the index. But just to answer your question directly, the point is the index is that if there are documents that are covered by 552A2, then the agency needs to index them. And so the dispute here is about whether the documents are covered by 552A2 or not. So if they got an order saying insignificant documents are covered, then that would come with, coming with that would be the indexing requirement. Well, it's not, I mean, that would be a legal consequence of it. If the agency were told by this court, you know, these documents are 552A2 documents, then the indexing obligation would be triggered. I see. Okay. Last question. Now, you went into the merits. I wasn't going to until you did. And you don't have to answer this question. I know you may not know the answer. But when I looked at the procedures that are in JA42, my question was why is OLC doing this? Why make this distinction between significant and insignificant? Wouldn't it just be easier to put out everything that's not privileged? Well, what's the reason for that? If you don't know, I understand. Just to be clear about this. It would be easier for the agency, wouldn't it? Well, but you say everything that's not privileged. I mean, it basically all is privileged. And so the question is really about whether to waive privileges. Because we're talking about legal advice here. And, you know, that's what was discussed at the electronic front here. By definition, we're talking about unprivileged documents. Now, if they're all privileged, you know, maybe plaintiffs someday will get their quote reading room and it will be empty, correct? But there's nothing in it. But the fact is that there have to be unprivileged documents. Otherwise, OLC wouldn't be publishing its significant decisions, right? No, Your Honor. What happens is OLC determines which ones are significant, and then if they're significant, then there's a process by which they determine whether release of the document, though technically privileged, whether release of the document would actually harm the interests of the executive branch or the affected agencies. And then they determine whether to waive the privilege or not. I would have about that. Doesn't the privilege belong to the, if it's a privileged document, privilege belong to the client agency rather than to the OLC? Your Honor, that's a complicated question about who exactly the client is in this context. But as a practical... If it's a privileged document, then there has to be a client agency, doesn't there? Well, I mean, we use colloquially the term client agency. The client is the United States. But as a practical matter, Your Honor, the way this is resolved is that they consult all of the affected agencies. And in practice, if affected agencies object to the disclosure, then it's extremely unlikely that it would be discretionary. That would be consistent with the idea that the privilege belongs to the client agency rather than to the OLC. They would be acting consistent with that. I'm not sure as a technical matter whether that's correct or not. That's a little beyond what I know here. But in any case, wouldn't a Vaughn Index be created and produced to the plaintiff? If there were litigation, I assume is the premise of that question. Yes, if there were litigation. Yes, I mean, obviously there could be circumstances, you know, about the completeness of it. But, yes, one would expect a Vaughn Index, yes. And doesn't that go to the adequacy issue? In the sense that the Vaughn Index, I mean, getting the Vaughn Index at least notifies the plaintiffs of the universe of documents that are out there. They can't see them, but they learn the identity or something about the identity of them. Potentially. Again, we are well beyond this case. Obviously, depending on the nature of the advice, sometimes the subject matter is itself privileged. And so there might be disputes about the adequacy of the Vaughn Index, too. But if the question is whether plaintiffs could litigate that they aren't getting enough information either by not getting an adequate index or by not getting the documents themselves in a FOIA suit, then the answer clearly is yes.  No. Okay, thank you. Thank you, Your Honor. Any time left? Okay, Mr. Morrison, we gave Mr. Teddy a lot of time, so you can take three minutes. Thank you. I want to begin by quoting what Terry said. He said, we can get any document that OLC has, meaning we get documents at the time we make our request. Our request is for OLC on a continuing, ongoing basis to publish these opinions so that everybody can have them and the relief you can get after the document is created is different from the relief you could get before. Second, as far as the index is concerned, it is true we didn't specify it in our complaint. It was made clear to the district court. But it is, as the government conceded, an inevitable consequence, a legal consequence. If we have these opinions, it has to be made. So we didn't think we had to put it in there, but it's clearly there, and it clearly raises a problem different from the production and injunction parts of A2. Third point I want to make is that the Garcia case on which the government relies, there were two parts of that decision in this court. One said that 704 precluded one claim, and the other said 704 didn't preclude the claim. And that's important because I think what it shows is that the court has recognized the necessity of proceeding on a claim-by-claim, statute-by-statute basis to see whether 704 applies. The last point I want to make about Kennecott Copper is that the court, this court, specifically did not reach the APA claim in that case because it hadn't been properly presented below. And so the extent that Kennecott Copper is relevant, it seems to me, to at least leave open the possibility that an APA case like this can be brought as we have brought it here. If the court has no further questions, I have nothing else that I want to add. Okay. Thank you. Case is submitted. Thank you, Robert.
judges: Tatel, Wilkins, Sentelle